IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MAYORIE ROSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1120 |
| | ) | |
| KOMATSU AMERICA CORPORATION, | ) | |
| CHRIS DUBOIS, and TUDTU COLLINS, | ) | Honorable Joe B. McDade |
| Administrator of the Estate of MICHAEL | ) | |
| L. COLLINS, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION & ORDER**

Before the Court is a Motion to Dismiss (Doc. 7) certain claims of the Amended Complaint (Doc. 2) in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is ready for disposition. For the reasons stated below, the motion (Doc. 7) is GRANTED IN PART and DENIED IN PART.

### FACTUAL BACKGROUND

Plaintiff Mayorie Rosas ("Rosas") has brought a four count complaint alleging that she was subjected to horrific discrimination at work due to her sex and race in violation of federal and Illinois law. The following facts are taken from the Amended Complaint (Doc. 2) and are assumed true for purposes of ruling on the instant 12(b)(6) motion.

1

Rosas is a Hispanic woman of Puerto Rican origin who speaks with a Spanish accent and has a distinct non-Caucasian appearance. She is a janitor at Defendant Komatsu America Corporation ("Komatsu") and has been so employed since 2011. Throughout her employment at Komatsu she has been subjected to vile and consistent verbal and physical harassment and assault by co-workers. In 2012, Rosas and other female co-workers complained to Komatsu's human resource department about the harassment but no action was taken.

In 2012, Michael L. Collins ("Collins") become Rosas's immediate supervisor. Collins sexually harassed and abused Rosas verbally and physically for four years. In September 2014, Rosas complained to Chris DuBois (DuBois"), Komatsu's Manager of Human Resources, directly about Collins's conduct. DuBois expressed to Rosas that he did not believe her. Four days later, DuBois told Rosas Collins's conduct against Rosas was a he-said/she-said situation and took no action. He also affirmed to Collins that his job security and future were safe. He encouraged Collins to discipline Rosas more. After September 2014, Rosas experienced increased harassment from male co-workers. In August 2016, Collins threatened and disciplined Rosas in a hostile manner. Rosas fell ill and had to be taken from work in an ambulance. Collins died in October 2016.

In January 2017, Rosas filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission against Komatsu and Collins. In February 2017, someone at work wrote "WHORE" on Rosas's uniform. Rosas reported it and was given a locker and transferred to a new work area; no one

was disciplined. In December 2017, a white male co-worker told Rosas that Puerto Ricans are worthless, stupid, and unworthy of aid from the United States. Rosas told him to stop making such comments, yet he continued. She apparently told the co-worker that she "would go off on him." Rosas then informed DuBois about the co-worker's comments. Rosas was disciplined for telling the co-worker not to make her "go off on [him]". The co-corker was not disciplined. DuBois told Rosas her statement violated the company's anti-violence policy and that the co-worker's statements were political opinions to which he was entitled to make in the workplace. DuBois told Rosas it was not his job to help her.

On April 20, 2018, Rosas instituted this action. She later filed an Amended Complaint alleging the following Counts: Count I - Race Discrimination and Retaliation against Komatsu, Dubois, and the Estate of Michael Collins in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and 42 U.S.C. § 1981; Count II- Gender Discrimination and Retaliation against Komatsu in violation of Title VII and the Illinois Human Rights Act, 775 ILCS 5/1-10, *et. seq.*, ("IHRA"); Count III- Sexual Discrimination and Retaliation against Komatsu, DuBois, and the Estate of Collins in violation of the IHRA; and Count IV- Violation of the Illinois Gender Violence Act, 740 ILCS 82/1, *et. seq.* ("IGVA"), against Komatsu, DuBois and the Estate of Collins.

Defendants Komatsu and DuBois now move the Court to dismiss Count I's Section 1981 claim against DuBois and Count IV's claims against DuBois and Komatsu under the IGVA.

3

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the challenged pleading must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant] has a right to relief, raising that possibility above a 'speculative level.' " *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955. Conclusory statements and labels are insufficient; enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted).

## DISCUSSION

**I.    Rosas's Illinois Gender Violence Act Claim Against Komatsu**

Defendant Komatsu argues that one may not maintain an IGVA claim against a corporation because of the IGVA's statutory text and district court case law interpreting that text. Rosas counters that district court cases and Illinois appellate court cases have allowed such claims to proceed, and the Court should follow those cases.

District courts that have explicitly considered the issue of whether an entity, as opposed to a natural person (human being), can be sued for violating the IGVA have all concluded that such suits against entities cannot be maintained. *Doe v. Freeburg Cmty. Consol. Sch. Dist. No. 70,* No. 14-CV-674-NJR-DGW, 2015 WL 3896960, at *4 (S.D. Ill. June 23, 2015) ("In sum, the courts that have conducted a statutory analysis of the Gender Violence Act unanimously agree that the Act does not apply to corporate entities."); *Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 744 (N.D. Ill. 2014) ("The plain meaning and context of the IGVA both indicate that a corporation is not a 'person.' Thus, the court concludes that the IGVA's cause of action does not extend to corporations."); *Doe v. Sobeck*, 941 F. Supp. 2d 1018 (S.D. Ill. 2013); *Fayfar v. CF Mgmt.-IL, LLC*, No. 12 C 3013, 2012 WL 6062663 (N.D. Ill. Nov. 4, 2012).

Rosas urges this Court to disregard those cases and their thoughtful analyses, and instead agree with Illinois appellate court cases and some district court cases that have allowed IGVA claims against entities to proceed. The problem with using these cases is that none of them specifically and thoughtfully considered the issue of whether an entity as opposed to a natural person (human being) can be sued for violating the IGVA.

For example, Rosas cites *Doe v. Psi Upsilon International*, 963 N.E.2d 327, 2011 IL App (1st) 110306, in support of her argument. There, the trial court granted the entity defendant's motion to dismiss the IGVA claim against it pursuant to section 2-615 of the Illinois Code of Civil Procedure because (1) defendant was a "person" under the IGVA and (2) the complaint was factually deficient. Rosas claims that court implicitly approved of the possibility that a corporate entity may be a defendant under the IGVA, but the Court finds that is not at all a fair reading of what the *Doe* court did. Instead, the *Doe* court completely sidestepped the issue of whether an entity was a "person" under the IGVA and held that the facts alleged in the complaint were deficient to state a plausible claim that the entity defendant personally assisted the abuser's alleged assault of plaintiff. *Id.* at 963 N.E.2d 327, 331, 2011 IL App (1st) 110306, ¶ 13. The same is true of *Watkins v. Steiner*, 2013 IL App (5th) 110421-U, an unpublished order filed under Illinois Supreme Court Rule 23 cited by Rosas, where the court merely assumed an entity could be liable under the IGVA without engaging in any of the statutory exegesis such as that undertaken by the cases cited above. *See Freeburg Cmty. Consol. Sch. Dist. No. 70*, 2015 WL 3896960; *Fuesting*, 30 F. Supp. 3d 739; *Sobeck*, 941 F. Supp. 2d 1018; *Fayfar* 2012 WL 6062663.

This Court concludes that a critical interpretation of "persons" as used in the IGVA does not encompass legal entities other than individuals for the same reasons announced in *Freeburg Cmty. Consol. Sch. Dist. No. 70*, 2015 WL 3896960, *Fuesting*, 30 F. Supp. 3d 739, *Sobeck*, 941 F. Supp. 2d 1018, and *Fayfar*, 2012 WL 6062663. First, the Court agrees that the term "person" may encompass entities in some

6

situations but need not always. The Court also agrees with the proposition that the Illinois legislature has <u>expressly indicated</u> instances where it intended the term "person" to have a broader meaning than a natural human being. *See, e.g., Freeburg Cmty. Consol. Sch. Dist. No. 70*, 2015 WL 3896960 at *3; *Fayfar*, 2012 WL 6062663 at *2. The Court agrees further with the other courts that concluded corporations cannot be liable under the IGVA because one can only be liable under the IGVA for "personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence," 740 ILCS 82/10, and corporations cannot do anything "personally" since they act only through their agents. *See Freeburg Cmty. Consol. Sch. Dist. No. 70*, 2015 WL 3896960, at *4.

Rosas next contends that her IGVA claim against Komatsu should nevertheless survive under a separate and distinct theory of respondeat superior. She cites to *Freelain v. Vill. of Oak Park*, No. 13 C 3682, 2014 U.S. Dist. LEXIS 5268, at *34 (N.D. Ill. Jan. 15, 2014) in support for her theory. There, a defendant argued that an IGVA claim against a local municipality was barred by the Illinois Governmental Tort Immunity Act, 745 ILCS 10/2-204. The *Freelain* court did not engage in anything beyond a perfunctory analysis of the relation between respondeat superior and the IGVA. In merely found that Section 2-209 on the Act applied to the plaintiff's claim, not Section 2-204, and then concluded that Section 2-209 did not explicitly preclude a plaintiff from using the theory of respondeat superior to establish a public entity's liability. *Id.* at *34.

7

Rosas also cites *Sobeck*, 941 F. Supp. 2d at 1027, for support for her vicarious liability argument because there, the court declined to find a corporation cannot be vicariously liable for its employees' IGVA violations committed within the scope of their employment. The *Sobeck* court did not engage in any analysis on the issue either; it merely stated it declined to find the entity defendant there could not be held vicariously liable because the defendant submitted a perfunctory argument. *Id.* ("The plaintiffs also urge the Court not to dismiss their IGVA claim against the H Group because it may be vicariously liable for Sobeck's and Broskie's acts of encouraging or assisting L.T.'s gender-related violence. The H Group's reply brief addresses this contention in a single footnote that reiterates its theory that a corporation cannot be directly liable under the IGVA. This cursory argument is insufficient to persuade the Court that a corporation cannot be vicariously liable for its employees' IGVA violations committed within the scope of their employment.").

In *Fayfar*, in contrast, the court actually gave a reason why the vicarious liability proposed by Rosas here is to be rejected. 2012 WL 6062663, at *3. There, the court noted that vicarious liability could be imputed to common law tort claims, not causes of action created by statute, like the IGVA, without some indicia of the legislature's intent to do so. *Id.* That conclusion is undoubtedly based upon the long standing principle that courts will try to ascertain and give effect to the intention of the legislature when interpreting a statute.

The IGVA reads in relevant part as follows:

Cause of action. Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages,

> injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 ILCS 82/10. Thus, one who has <u>perpetrated</u> an act of gender-related violence under the Act is one who has <u>personally committed</u> the act or <u>personally encouraged or assisted</u> the act. In Illinois, "common law vicarious liability claim typically requires no proof of the employer's knowledge, consent, or culpability." *Vancura v. Katris*, 939 N.E.2d 328, 345 ( Ill. 2010). Such liability is completely derivative and only exists by virtue of the master and servant contractual relationship. <u>*Alms v. Baum*</u>, 796 N.E.2d 1123, 1129, 343 Ill. App. 3d 67, 74 (1st Dist. 2003). Given that, this Court finds it would be wholly inconsistent and thus illogical, for the Illinois legislature to write that only one who has <u>personally committed</u> the act or <u>personally encouraged or assisted</u> the act can be liable for the act, but then allow for one who had no personal involvement with the act to nevertheless be liable for the act, simply by virtue of being the abuser's principal or master. In sum, the Court rejects Rosas's theory of vicarious liability for Komatsu to be liable for the IGVA violations of Collins or DuBois.

For these reasons, the Court dismisses Rosas's IGVA claim against Komatsu found in Count IV of the Amended Complaint.[1] The Court will not allow her to amend

---

[1] The Clerk's Office is directed to make note that the Court is not dismissing Count IV in its entirety since it has been pled against Komatsu, DuBois and the Estate of Collins.

the Amended Complaint and replead this claim because there are no facts she can plead to make this claim legally cognizable against Komatsu.

## II. Rosas's Illinois Gender Violence Act Claim Against DuBois

Rosas also brought an IGVA claim against DuBois in Count IV. Defendant DuBois contends the facts alleged in the Amended Complaint do not suffice to make out a plausible allegation that he perpetrated any acts of gender violence against Rosas. As shown above, one who has <u>perpetrated</u> an act of gender-related violence under the Act is one who has either <u>personally committed</u> the act or <u>personally encouraged or assisted</u> the act.

DuBois is alleged to have essentially done nothing to stop Collins from abusing Rosas, despite her complaints to him. On or about September 12, 2014, Rosas complained to DuBois about sexual harassment and other misconduct to which she had been subjected by Collins, including that Collins had sexually assaulted her. (Doc. 2 at ¶37). Rosas also told DuBois that she was scared because Collins had threatened her and told her that she would not be believed if she complained. Before conducting any investigation, DuBois immediately told Rosas that he doubted Collins made that statement to her. (Doc. 2 at ¶38). On or about September 16, 2014, DuBois told Rosas that it boiled down to her word against Collins's word. (Doc. 2 at ¶39). Following DuBois' recommendation, Komatsu did not separate Collins from Ms. Rosas, and instead continued to require that she work under his immediate and daily supervision. (Doc. 2 at ¶39).

Further, Collins asked DuBois if Rosas' allegations would affect his future with the company. DuBois advised him, "absolutely not. That is based on skills and overall work." (Doc. 2 at ¶40). DuBois advised Collins that Ms. Rosas was a low-skilled worker who posed a supervisory risk to him, and that he should discipline her more. (Doc. 2 at ¶41). Thereafter, Collins attempted to discipline her and repeatedly offensively touched Ms. Rosas, including grabbing her buttocks. (Doc. 2 at ¶42).

Rosas argues these allegations are sufficient for a jury to infer DuBois enabled Collins's abuse of Rosas. Essentially, the issue comes down to whether one can fairly interpret DuBois's apathy, inaction, and encouragement to discipline Rosas as personally encouraging or assisting Collins's sexual abuse. The Court does not believe so.

DuBois is alleged to have turned a blind-eye to Rosas's complaints of Collins's conduct. The Court believes the terms "encourage" and "assist" as found in the IGVA, should be given their plain meanings, just as the *Sobeck* court did. 941 F. Supp.2d at 1028 ("the Court turns first to the plain meaning of the words in the IGVA. According to the Merriam-Webster Dictionary Online, 'encourage' means 'to inspire with courage, spirit, or hope,' 'to attempt to persuade,' 'to spur on,' or 'to give help or patronage to,' available at http://www.merriam-webster.com/dictionary/encourage, and 'assist' includes 'to give support or aid,' available at http://www.merriam-webster.com/dictionary/assist. Each of these implies a conscious, active role, not merely a failure to act or tolerance of a situation."). Thus, this Court concludes simple

11

acquiescence and inaction cannot suffice as encouragement and assistance under the IGVA.

For this reason, this Court disagrees with the court in *Cruz v. Primary Staffing, Inc.*, to the extent it allowed an IGVA claim to proceed against a defendant that received complaints of sexual harassment or assault and took no action. No. 10 C 5653, 2011 U.S. Dist. LEXIS 29237, at *4 (N.D. Ill. Mar. 17, 2011). *Cruz* did find that choosing to punish the complainants instead of taking action against the abuser could constitute encouragement or assistance. The Court does not find any fault in such finding. However that is not the case here because the only discipline from DuBois to Rosas mentioned in the Amended Complaint related to the racial/ethnic discrimination imposed upon her by some unnamed white co-worker, not Collins's sexual abuse.

Next, Rosas alleges DuBois told Collins to "discipline her more in the future." (Doc. 2 at ¶41). DuBois telling Collins to do something against Rosas is a not passive or simple acquiescence. The Court finds that telling Collins to act falls within the meaning of encouragement and assistance used in the IGVA. The ordinary meaning of the term "discipline" in Webster's Unabridged Dictionary is "punishment inflicted by way of correction and training." Collins was Rosas's supervisor and thus disciplining her was within the normal purview of his role vis-a-vis her. DuBois's alleged statement then is neither vague nor cryptic enough to allow for an uncommon or extraordinary understanding of its meaning to encompass sexual abuse of Rosas.

Without a nexus between the alleged statement and the alleged sexual abuse, the allegation is lacks legal significance, and cannot serve to support a plausible claim.

For these reasons, the Court finds that the Amended Complaint fails to state a plausible claim under the IGVA against DuBois as alleged in Count IV. However, because the deficiencies here are factual and not legal, the Court will allow Rosas an opportunity to replead this claim. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

### III. Rosas's Section 1981 Race Discrimination and Retaliation Claim Against DuBois found in Count I

In order to plead a plausible Section 1981 claim of racial discrimination, one must plead facts that support she is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of the plaintiff's race; and (3) the discrimination concerned the making or enforcing of a contract. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). Employment suffices as a contractual relationship under Section 1981.

Rosas pled that she is a member of the Hispanic race and that she was in an employment relationship and the racial discrimination impacted that relationship. Thus, the Court is satisfied that the first and third elements of a viable Section 1981 claim have been pled. The Court also finds that there are sufficient factual allegations in the Amended Complaint for one to conclude DuBois intended to discriminate against Rosas on the basis of her race as well.

Rosas states that a co-worker directed a clearly racist tirade against Puerto Ricans at her, calling them stupid and worthless, and unworthy of aid from the United States. Rosas is of Puerto Rican descent. It is completely rational to draw the conclusion that the co-worker made these comments to Rosas because she is Hispanic and of Puerto Rican descent. Instead of disciplining that co-worker, DuBois disciplined her for threatening the co-worker to "go off on him" if he kept on with the tirade. The implication is clear that her discipline for fending off a racist tirade was pretextual. Pretextually disciplining someone in such circumstance is retaliatory and clearly actionable as discriminatory conduct.

Moreover, DuBois told Rosas that the coworker was permitted to state these opinions to Rosas on the worksite and that she is required to tolerate the same without complaint. Thus DuBois is alleged to have told a Puerto Rican woman that her white male co-worker is privileged to espouse to her at work that people like her, Puerto Ricans, are stupid, worthless, and unworthy of aid from the United States. The Court finds that a jury could fairly infer from DuBois's alleged actions that he had the intent to discriminate against Rosas on account of her race. For these reasons, Defendant DuBois's motion to dismiss Rosas's Section 1981 Race Discrimination and Retaliation claim found in Count I against DuBois for failure to state a claim is denied.

## IV. Rule 8 and 10 Considerations

Since the Court will give Rosas the opportunity to replead certain claims, the Court will take the opportunity to direct Rosas to structure her next amended

complaint in a more clear and straightforward manner. Count I as currently drafted contains claims—discrimination and retaliation—that contain two different sets of elements under two separate statutes—Title VII and Section 1981. It will be difficult to present this single Count to a jury in a straightforward manner should this matter proceed to that stage of litigation. For this reason, the Court directs Rosas to draft the next amended complaint so that each of these claims is stated in a separate count with its own set of elements.

## CONCLUSION

For the reasons given above, the Motion to Dismiss (Doc. 7) brought by Defendants Komatsu America Corporation and Chris Dubois seeking to dismiss certain claims of the Amended Complaint (Doc. 2) in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED IN PART and DENIED IN PART.

IT IS HEREBY ORDERED Plaintiff Rosas's claims against Defendants Komatsu America Corporation and Chris Dubois for violation of the Illinois Gender Violence Act, 740 ILCS 82/1, *et. seq.* ("IGVA") in Count IV of the Amended Complaint are DISMISSED. Plaintiff is granted twenty-one (21) days from the entry of this Order to submit an Amended Complaint repleading her Illinois Gender Violence Act claim against Defendant DuBois. She may not replead her claim against Defendant Komatsu. Defendant DuBois' motion to dismiss Rosas's Section 1981 claim against him in Count I is DENIED.

SO ORDERED.

Entered this 7th day of August, 2018.

                                                       s/ Joe B. McDade
                                                        JOE BILLY McDADE
                                        United States Senior District Judge